Case No. 23-5009, Animal Legal Defense Fund, Inc., Appellants v. Thomas J. Vilsack, Secretary, United States Department of Agriculture, et al. Mr. Walts for the Appellants, Mr. White for the Appellees. Good morning, Council. Mr. Walts, please proceed when you're ready. Good morning. I'm Danny Walts on behalf of Animal Legal Defense Fund. ALDF brought this case on behalf of its members, including Marie Mastracca, an unwitting consumer who regularly bought Ms. Leading Perdue chicken products that the government failed to review. She has a genuine interest in continuing to buy raw chicken products for her elderly dog, and because of the government's failure to review label imagery, she cannot have confidence in any of the chicken product labels that she must buy. What about written claims? I thought that the challenge here was limited to graphic claims. No, it's not, Your Honor. The challenge is a pattern and practice claim based off of the agency's failure to approve or review and properly approve claims that Perdue Freshline claims, which confused Mastracco on both the textual grounds and the imagery grounds, as well as the agency's failure to review imagery altogether. Imagery, meaning words? Imagery. So, the PPIA doesn't really distinguish within labels that a label is to be reviewed holistically. That includes both the graphic imagery and the text itself. And so, when I say imagery, I'm sorry, I mean the graphics on labels. That would be the chickens that are outside under the sun, as opposed to words like cage-free, both of which misled Mastracco when she purchased the Freshline products. But I thought the upshot of the complaint was that the problem that's seen is that there's not a review of the graphics. And because there's not a review of the graphics, there's no way to look at the pictures and get an accurate sense of whether the pictures are giving you the real world. And because the pictures aren't giving you the real world, with respect to labels other than the Purdue labels that are directly an issue, the second claim is about a general confusion and an inability to figure out what the real world is. And so, essentially a decisional paralysis that doesn't allow her to make an informed assessment of which products to buy to make sure that the chickens are being raised in a way that is commensurate with her beliefs, because you can't tell from the pictures whether that's in fact the case. So isn't it about the injury comes from the lack of review of the pictures. So the claim is about the pictures. The injury, and yes, I would agree with most of what you're saying, Your Honor, I think the injury and the claims are both cover, deal with both the sort of interplay of the text and the imagery. It's under the PPIA, Congress sought to define label broadly to include both the imagery and the text, and sought to protect consumers from false and misleading claims that the government fails to review properly. So when you're looking at the injury, I think you're looking at the holistically label, and the imagery, black letter consumer law says that, I think in the words of the Second Circuit, consumers aren't required to do this disputatious dissection of labels to figure out what aspects of labels are proper or maybe accurate, what aspects of the labels are inaccurate and weigh those against each other to avoid injury or to avoid having that consumer harm. And I think that's what the government on appeal is asking Ms. Strzokow to do, they're asking for her to be able to read certain aspects of the, to ignore the imagery on a song to attract consumers to the label, and know that that may be misleading, but focus entirely on the text, that's not what consumer case law requires, it's also not manageable. Can I ask you this? So suppose, I know you'll resist it, this is the real world, but just assume for purposes of hypothetical, this is the real world, that there's no other chicken product on the shelves that has a picture, doesn't have a picture at all. It's got words, they have words, but they just don't have pictures. If there's no other product that has a picture and there's no allegation in the complaint that there is another product that has a picture, would she still state an injury? I think so, Your Honor, no, you're saying no other because she does still have access to the Purdue products. Oh, yeah, sorry. Thanks for the, thanks for the refinement. I'm talking about the injury that stems from the inability to suss out whether the non-Purdue products involve chickens that are raised in a manner that she finds consistent with her beliefs. But I don't think that there needs to be an allegation of another product available to her aside from the Purdue products because, you know, pursuant to Davidson, she would just be like the Davidson plaintiff, someone who is interested in a product, otherwise wants to buy that product, was misled. Right, but I'm assuming that just for purposes of this, I'm assuming that the injury she's claiming is not that she might buy another again by Purdue. And so she could be misled again about the same label by which she's already been misled. But her claim is only about non-Purdue labels. And on that, if there's no other product that has a graphic that includes a picture at all, would she still be stating an injury as to that part of it, not as to that I might buy another Purdue product and therefore I might be injured again because I'm misled by Purdue, that I might that I have an injury based on the non-Purdue labels, given that the government doesn't review the picture on the Purdue label in the way that they should have? Is she stating a claim as to the other non-Purdue labels if, in fact, there's no other non-Purdue label that has a picture at all? Well, it's hard to envision a world where there is no other situation where she goes walks into a grocery store and there's no imagery on there. I think she has a lack of now that she knows that there's a lack of the government is failing to fully adequately review labels, in part because of the its failure to review the imagery, but also because of her experience with the government allowing the Purdue labels to pass through its review, including the terminology cage-free. While that being, I think, you know, we have in the complaint that one in three consumers is misled by that label. She doesn't have any confidence in. What was that? Did you just say that it wasn't really highlighted in the complaint that cage-free was misleading? No, sorry. One in three, as we allege in the complaint, we had a consumer expert do a survey and found that one in three consumers found the Purdue labels to be misleading. And that was because of, as Mistraco alleged, just like Mistraco, a combination of the cage-free textual terminology and the imagery, the interplay of those together. What rides on your argument that it's the interplay of the text and the imagery? I mean, put aside for a minute the government's third argument that, you know, consumers can avoid any misleading effect of imagery by just relying solely on the text. Assume we don't accept that argument. Why are you making this interplay? This is not what I understood from your brief to be your argument, this interplay argument. I thought the point was. Even without any claim about free range or free roam, that the imagery on the Purdue labels implied that the chickens were actually raised out of doors with sun and grass and freedom to move around and that that was an implication that arose from the image. Is that not your position? That is the position. So I think what the government should do is that when reviewing labels is look at the labels holistically. That includes both text and imagery. But. Yes, the imagery of the chickens in outside on the grass under the sun. Does give the strong inference that the chickens were raised outside when, in fact, they were not. And that's a that's a that's an arbitrary and capricious claim we expect to succeed on. Should we should we be able to make that merits argument? And. And, you know, but to go to this whole back to the government's argument that Mistraco may rely on the text, I just want to take a step back and. I sort of question what they're arguing, which is seems to be putting a significant burden on the consumer to have to figure out what potholes to avoid not paying attention. Don't pay attention to the text. Excuse me to the imagery. Don't pay attention to certain texts that's already confused you. And then a consumer must need to read the federal register to fully understand what all the textual claims may be so that she may not be avoid the Ultra Products Inspection Act doesn't doesn't put that burden on the consumer. It actually puts it on the government. So does your claim depend on us accepting the approach of Davidson? No, your honor, I think that there. There are the. The TransUnion, for example, identifies economic injury as as a tangible, tangible concrete interest. She has had economic. Straco has had economic injury. What is the alleged economic injury? She said that she sought to purchase a a product that aligned with her values that she perceived aligned with her values and was misled and didn't get the benefit of her bargain. And you describe that as ethical. It doesn't seem as so. So what about when it seems to me one way to have standing in a case like this for future injury is and I'm thinking a little bit about the facts of the Johnson and Johnson case, and although the majority rejects this analysis, but if a competitor. Of Purdue, let's say a competitor that does actually have free roam or free range chickens and uses a similar imagery on their package to produce fresh line imagery and they charge a similar price, but looking at the two side by side in the grocery store, consumers or maybe, you know, Purdue charges slightly less. So the. Consumers see that as a commensurate product and they buy produce fresh line product over the one that's much more expensive to produce and actually a different kind of product. So in that situation, it seems that the competitor would have standing because the price of produce product is artificially inflated. I don't take you to be alleging that that harm is present in this case, although I'm unclear why you aren't alleging that, for example, even though I mean, we have this catch 22 situation where as soon as a potential plaintiff is aware that something's misleading, she's no longer misled and therefore how can she claim she would rely on that in the future? But it seems like this competitor standing type analysis could be applicable in a non-competitor case like this if the plaintiff says, I'm aware now, but the rest of the world isn't and I have to buy something. And even if I'm going to, you know, tolerate the inferior product and buy Purdue, I'm paying too much for what it is. I don't see that. Yeah, I think we do argue that with the line of lost opportunity cases that I think Orangeburg cases, which is. She. The hypothetical you just presented of the competitor out there who is actually adhering to the practices that that are that are on the label, unlike the humane machine. She doesn't Mraco doesn't know that that alternative product is necessarily accurate, but it may be, as you just said, and she has injury not only from being the choice is either in this situation, purchase a product that she may. She believe that she believes has meets with her preferences, but but doesn't, so she doesn't get the benefit of her bargain or she forgoes alternative. She forgoes a product that she does want to buy. And because of the government's failed regulation, she doesn't have she's the lost opportunity to access products that she. But even without an alternative product, the same economics would obtain if Purdue is differentiating its fresh line from some other ordinary and charging more. But really, all that's improved about the fresh line is that it's got a prettier label that actually is misleading enough to make people pay a premium. You don't need a competitor in the market to make that claim. But I don't take you to be making that claim here. When you say she believes it like she now knows that produce product doesn't perform as well and whatever ethical injury that may cause her, it doesn't seem to me to be tied to misrepresentation. And so so it doesn't seem like a harm that's necessarily caused or addressable. Well, I see I see that as a as a consumer confusion injury as opposed to some sort of ethical injury. So that it's it's no longer confusing. I can't watch no longer confused vis-a-vis Purdue. Right, as to produce, she's not she is to the other products that are out there in the market. Actually, I would disagree. I'm not sure she's entire. She is no longer confused to Purdue. What she knows is that it's just as in Davidson. She knows that she doesn't know. She knows she knows that this product is the result of certain certain practices. But Purdue's I think we have a complaint that the Purdue's website says that it is moving towards chickens with raised in outdoor conditions, back 25 percent of the chickens in its pipeline are raised outdoors. And so there may be a point in time when the label is accurate or at least is accurate in a way that is consistent with her, which she prefers. And so she but she will never know whether she can rely on it. I mean, we'll have that that ongoing. Let's just focus on the time aspect of this and this building on what some of the back and forth with Judge Pillard. This is a this is a frustrated consumer, she bought the product in the past, she alleges that she was misled and that would clearly give her standing to seek some kind of backward looking. Traditional consumer protection action, this case is all about forward looking, so you've said this a couple of times, but walk me through exactly. What is her future injury? That will would be redressed by an order taking this label off the product, she knows everything she needs to know, she knows that the product doesn't conform to what how she would like animals to be treated, and she knows the government doesn't review the cartoon. So, right, it's as if the cartoon just doesn't mean anything. She knows all that. How is she better off if the label, the cartoon comes off the label? She's better off, so so first a couple of things, she unfortunately cannot seek backward looking, right, thanks to the preemption provision. Right. But you need standing for you need a separate theory of standing for forward looking. That's right. And the way in which that her injury would be redressed by a court order that the if the if the government starts reviewing imagery on labels and it does so through its pre market approval process. Products that are misleading or all of a sudden imagery that's misleading doesn't it's weeded out, doesn't make it through the government's preapproval process. And those that are are not misleading or that are accurate where the applications submit submitted includes evidence showing that the chickens are raised outdoors, those will make it through. And so she loses this consumer confusion, lack of confidence. The judge and I were just discussing because everything that's out there, she can she should have confidence. It comes from chickens who are raised outdoors. How is that concrete? Can you describe how it would change? Her value proposition or her purchasing behavior, you would allege that she will continue in the existing market. To buy chicken breasts, yes, yes, right, so she's we allege that so unlike some of the other cases, government sites or even support our position, I think that her compulsion to buy chicken breasts for her dog is much stronger than what we see in other circumstances. Right. There's a certain certain ways, but it's unhelpful in another way, which is what what is the concrete benefit to her other than dispelling confusion? Can you make that more concrete in terms of a different purchasing decision or some value? Well, she has more certainty that the purchase that she the purchasing decision that she will that's she will. Not risk, so it's it's almost like an increased probability of certainty. The. Circumstances she's in now, we were discussing is that she will either buy a product that she has that she that is that she that comes from practices she abhors without knowing it or or with knowing it. If she feels like she has to only buy the product or she's buying a product or she's foregoing a product, she has the risk of foregoing a product that she that she may value that that. There's this risk that that will happen that I mean, she may get lucky and buy a product that is accurate, but that's she still has ongoing consumer confusion there. So the court, a court order that would force a government to review labels would increase the probability that she's accurate. Judicial review here is just through the APA, right? Yes. DPIA cause of action is for others. So you need a discrete agency action that's either final or unlawfully withheld. How do you get the right to you set a pattern and practice claim that would globally require the agency to review labels? How do you get that through the APA? We think the most you could get is something specific to Purdue. We have in the in the record we have after submitting the ALDF had submitted a request. I'm sorry. ALDF had submitted a request with the agency to to deny her Purdue labels sort of its pattern. It's pattern of constant approval of Purdue labels. And the agency's response was that it does not review imagery at all on labels. And so. You know, as part of that. That was central, I think, to the agency's decision to continue approving Purdue labels. And so what we'd expect from a court order would be that that that is an order that that we're not paying attention to imagery is unlawful. And the agency action or inaction, the specific the approvals of the labels without looking at the graphics. Yes, without. Yes. So just to make sure that I'm not confused about your confusion rationale, because I understood it. Your response to the questions about what's the forward looking injury is not about the forward looking injury vis-a-vis the Purdue label. I mean, you may have a Davidson kind of argument about that, but let's just put that to one side. Your focus is no, there's confusion because the lack of review of the graphics of the labels means that she can't look at the other labels and be sure that their images are accurately portraying the way in which the chickens are are not allowed to be outside. And as to that, in order to have that injury, it's going back to where I was at the beginning. We have to assume that there's other labels that, in fact, depict chickens being outside, because if there are none of those, then there's no the remedy can't help her because if there are no other images like that, then she's not confused by anything that's out there in a way that's going to be addressed by what you're asking the agency to be required to do. Yes, I think that's right. Setting aside the Purdue, right, putting aside the Purdue for the consumer confusion one, which is looking beyond Purdue to other labels. There has to be other labels that, in fact, contain a graphic that depicts chickens being outside. And if there were, then I take your point that if then at that point, if she thinks that the agency is falling asleep at the switch and they ought to be reviewing those and aren't, then she could look at the labels and think, I'm confused. I don't know whether to trust the image on this. It may or may not be accurate. I really care about whether it's accurate because I really care about only buying chickens that are allowed to roam outside. But I can't look at this picture and know whether it's, in fact, accurate. But if there are no other such pictures, then there's then there's no issue. Yes, your honor, I think that that's right. You know, I think we've we allege at paragraph 34 that she's going to suffer a lack of confidence in whether there are any chicken labels, the accurate descriptions of the is brought enough to encompass those other those other labels that are out there on the market. But it doesn't say that there are such labels. And no, your honor, I think any troll down a supermarket aisle will will make clear that there are. Also, it's a bit confusing just to even know, you know, to try to define what that type of label is. I'm thinking of chicken labels where the name itself also is of a chicken or is of is that there are labels out there that will say like naked chicken and it will be done in imagery that is of leaves. And so is that is that an image or is that is that is that text or is it both? It's really hard to disentangle the two. I think that's part of the reason why why Congress defined label to include both text and imagery. You know, that said, if if that's a needed allegation, that's something that we absolutely could add in. I don't have any concern. All right, why don't we give the government a chance, we'll give you all the time. Thanks. Thank you very much. Dwight. Thank you, your honor, and may it please the court for the government, the district court correctly held that plaintiff lacks associational standing because the allegation is of animal risk of future injury to say at the outset in response to some of the questions that were just raised as a point of clarification. This case is about imagery. It's not about the written text. The complaint is not alleging that the government fails to regulate written text here. It's alleging that the government is not doing imagery. And while we very much dispute that that's the case, the complaint is alleging is that Mistraco lacks confidence in animal raising imagery. And the reason these allegations are insufficient is because the complaint does not allege that Mistraco is certain or even likely to encounter this kind of imagery going forward. The complaint does not allege that she has any desire to purchase this particular product again. It doesn't allege that there are other kinds of products out there that have animal raising imagery, much less that there are enough of these products on the market that the risk of encountering them and having some kind of confusion is substantial. So about that, you've heard a couple of exchanges about whether there are such other products. And I think I understand your argument that regardless of whether there are or there's nothing in the complaint that suggests that there are. And if there's nothing in the complaints that suggests that there are, then when you look at the four corners of the complaint, that kind of consumer confusion injury isn't made out. But what's wrong with the response that, well, that allegation would be easy to make? There, in fact, are such products. It would all of it. All we would need is just an opportunity to amend the complaint to add one allegation that makes that out, makes that out. And it's actually true that that exists in the marketplace. Sure. So a couple of responses. First, I mean, we're not disputing that it's possible that there are these products that are there are other products out there. The standard to get injunctive relief here is that the harm is certainly impending. So there have to be enough of these products out there that there's actually a substantial risk. But in terms of what we can add to the complaint, what they can add to the complaint, what they can't. I mean, the district court here dismissed the allegations without prejudice. So they're free to file this claim again if they want to. I mean, I will say that they've already amended their complaint once. But whether they are given leave to amend again or whether they file a new lawsuit with these allegations, it makes no difference to us. So you so if it doesn't make any difference to you, then you wouldn't have a problem with them being given leave to amend because they could just as easily file a new complaint, as you as you point out, it was without prejudice. Right. It wouldn't make a difference. From your perspective, it doesn't matter. Let me just point out another couple of a few issues here with the allegations of this complaint. One other problem here is that the complaint doesn't allege what kind of confusing on other product labels going forward. I mean, in this particular case, the complaint alleges that Mistraco was confused by imagery of chickens on a farm in conjunction with some written text saying cage free. But it doesn't allege that she would have found she would have misinterpreted the label in the absence of that written text. And so going forward, whether she's going to actually misinterpret a label is going to depend a lot on what the label looks like and on what the images looks like. It will depend on a number of contextual clues on the label itself. So I think that just goes to show that the image here, the injury here that's being alleged is pretty speculative here because we're talking about hypothetical products that we don't know exist. And let me also just add that even if Mistraco was likely to encounter a product that has animal raising imagery on it, a consumer's lack of confidence in the imagery itself is not by itself a concrete injury. That's not what the Ninth Circuit said in Davidson. What the Ninth Circuit said in Davidson is that a lack of confidence in a label can lead to an injury under certain circumstances. If, for example, a consumer refrains from buying a desired product because they can't trust the representation or if the consumer buys a buys a product in reliance on a representation that turns out to be false, in which case they're duped. But if a consumer doesn't lack confidence in a label, buys the product and it conforms to their expectations, they haven't suffered a concrete injury. So I think that's another potential flaw here in the standing analysis, standing argument that might have to raise in here. But you say that if that can lead to concrete injury because the consumer might refrain from purchasing with respect to count one, she's alleged or they've alleged that that member has refrained from buying the Purdue product and they claim that that's enough harm. What's your position on why that's not enough harm? Well, so I don't think that the complaint alleges in terms of her behavior going forward that doesn't say anything about Purdue. I mean, I think you can infer that she has to buy chicken even if it's not perfect by her own standards. And it may be that sometimes Purdue, for other reasons, is going to be the preferable choice, but she's still subjected to this. I mean, what about the notion that she's also probably paying a premium for that product, a warranted premium for that product? It's made to look like like a more animal friendly product than it is. Well, I think I mean, the complaint doesn't contain any allegations about what she's paying for these products or if she's paying premium or anything like that. But I would say in terms of whether she's going to refrain from buying it in the future, I mean, part of what makes this case different from Davidson and some of the other cases that the plaintiff relies on is that the plaintiff here isn't alleging any desire to buy a particular product. He doesn't care if she buys Purdue or not. She just alleges that she wants chicken breast products for her dog. So whether she is ultimately deprived of the opportunity to buy Purdue again doesn't really seem like a concrete injury in the same way that it was in Davidson, because whether she buys Purdue or something else, I think doesn't make a particular difference to her. It didn't to the plaintiffs in Davidson either, did it? I'm sorry. It didn't matter to the plaintiffs in Davidson either. They were also looking for a type of product, a flushable. Right. Well, and they were unable to find it. I think the plaintiff in Davidson alleged that they wanted to buy the particular defendant's product and because it because it was flushable that they would buy the product again if given the opportunity and that they were frequently that the consumer plaintiff was frequently in a position where she would be confronted that product again. So to hear she's going to the supermarket, well, for a product that she feels compelled to buy, even if it's not ideal. And here, in a way, is stronger than than Davidson. One of the weak points of Davidson is why should she think that suddenly this why should the consumer in that case think that the product the company had made the point. As pointed out, Purdue has made assertions that are in the complaint that they are trying to conform more to the implicit message of the graphic. So why isn't the same harm here that that even though on the one hand she's been disabused of, you know, she knows that the that the claim was misleading, at least at some point. Why isn't it fair for her to think, well, it might no longer? So I think a couple of responses. First, I think I would take issue with the premise that this case is as strong as Davidson. There are a couple of critical allegations in Davidson that were essential to the Ninth Circuit's holding that were not made here. Number one, as I mentioned at the outset, the plaintiff is not alleged that she wants to buy Purdue products again. Number two, unlike in Davidson, the plaintiff is not alleging here that she'll go to the grocery store or that there's any there's no factual basis to think that she would encounter this product or any other products that have the potential to confuse her. And unlike in Davidson, she does have a way of determining whether the product conforms to her consumer preferences. She can read the written text on the label. That is a that is a tough argument. I mean, the FSIS is is statutorily required to review the graphics as well as other things. And we have this case span versus Colonial Village that has to do with depictions in real estate ads and their depictions of only white people at a complex. And so the you know, the potential purchaser is deterred and you can't say, well, you know, just avoid those products. I mean, that's that that can't be right to say that she should just avoid a product that has an unreviewed, misleading label and only go with things with the text. So that's not exactly what we're saying here. I think what the complaint is alleging is that there are new products that do conform to Mistraco's consumer preferences because they are labeled organic or free range. That means that the chickens were raised outdoors as Mistraco wants. So if she doesn't have to avoid a product, if she wants to buy the Purdue chicken product, she can just buy the ones that say organic or free range are outside. But I would also just note that this is not this particular sub argument. It's not the court doesn't really need to go there. I mean, it's enough that the allegations here are too speculative and that the ulcerative injury is not concrete because she's not alleging any sort of downstream consequences that flow from her reported lack of confidence. I'm not sure I understand what's speculative about it. If put aside the text response for now that she could just look at the text. But you said even independent of that argument is still speculative. If there's an allegation in there, suppose the complaint is about an allegation that there's a multitude of chicken products out there at the grocery store that show chickens in graphics that look like they're outside. So they make me think that they're being raised in the way that I think is appropriate. And so I'm tempted to buy them. But the government just isn't policing those graphics to know whether that's accurate or not. So I just have decisional paralysis. Yes, I'm going to buy something because my dog needs chickens. But I'm buying them without knowing whether it's actually true that the graph what the graphic tells me about the way they're being raised is, in fact, the case. And if the government did its job, then I wouldn't face that tension and uncertainty and anxiety that I now face. What's wrong? Why isn't that perfectly OK as an injury? So I sit down out of time. So it's still speculative because, as I noted at the outset, Mistraco is not the ALDF is not alleging what kind of imagery she would find confusing in the first place. It's not even clear from the complaint that she would have misinterpreted the animal raising imagery in the absence of the written text cage free. So whether there are other products out there that have chickens on a farm, that doesn't necessarily mean that she's going to be confused about the product. I mean, it could be imagery that's very realistic. It could be it's not. I mean, it's possible that she would encounter product that confuses her, but not likely based on the allegations in the complaint. What if we disagree and we're willing to read the complaint a little bit more liberally than your suggestion? And the cage free is an aspect. But really, she's seeing this picture and the simple inference that she draws is these chickens are raised outside. And indeed, it may be that she's looking for something more than free range because maybe free range is sort of, you know, a very limited amount of roaming, whereas this is free range, really. It may be that one of the I mean, as I read her complaint, one of the points that she's making is that a graphic can make claims that don't fit in to one of the standardized and scrutinized claims like organic or free range. She's there's suggestions that she's saying free range is free. Roam is something broader than free range. And it's not a defined term textually, but but it's a projection from this image. To that extent, it seems like, first of all, it underscores the importance of potentially reviewing the graphic. And second of all, it it's intention with the notion that she can satisfy herself by limiting her review of the text. Yeah. So a couple of responses. First, I mean, I don't want to get out in front of my skis on this, but I mean, we dispute that the government does not review. But that aside, we dispute we dispute that the government does not review the graphics as alleged. Oh, you do dispute that. I mean, the inspection services regulations require it. I mean, we haven't gotten to that aspect of the litigation. We're just in the pleading. So I'm assuming for the sake of appeal that the allegations that are correct. But I'm getting to your question. Even if we were to construe the complaint liberally, as you're saying, and even if we add the allegations or do a medical and add some of the allegations that judgment of Austin was suggesting, it still would not be enough because the plaintiff is not alleging any concrete injury. She's not alleging that she's going to refrain from buying a product because she doesn't know whether it was raised outdoors or not. That's not what the complaint says. It just says that going forward, she feels compelled to buy chicken breast products for her dog. It sounds like she'll buy the products no matter what. I mean, nothing in the complaint is rise supports the inference that this is affecting her decision making process in any way. That doesn't seem quite fair because she's going to be influenced in which product to choose, something that tends to show sunlight and valleys with chickens out of doors versus something that's just text and looks quite generic. And and she can assume the grimest of of circumstances that, you know, she's she's making choices in a in a market with lots of different options. This imagery is is misleading. It's and the fact that it's not being scrutinized for that, at least she's alleging. I mean, I think I mean, I think we are at the point where we're potentially adding some things into the complaint that aren't there and maybe construing it a little bit beyond what the plans are saying here. At the end of the day, the complaint really supplies no factual basis to think that she's going to encounter any product like this product that has. There's just no factual right. So so if we but if we assume that that allegation were added, I'm still not quite getting it. So suppose that we're only talking about graphics and we're only talking about confusion from graphics. And her point is and just imagine this complaint exists and we can talk about whether this, in fact, is commensurate with what's in the complaint. But let's just imagine the complaint does that does say this. I want to be sure when I buy a product that the chickens were allowed to go outside. And the way I make sure that as I look at the graphics and the graphics indicate that the chickens were allowed to go outside and therefore I'm feeling good about it. If I don't have any certainty that the graphics are accurate, then I'm not certain about whether they, in fact, are allowed to go outside. That causes me some angst because I don't know that the chickens were raised in a way that I think is OK. If the government did a job, I would be sure that that's my injury. I'm either unsure or I'm sure. And I'd rather be sure than unsure because I really care about this. It really matters to me. Is that that's not a kind of that is not a concrete injury under article three. And I don't think that Davidson or any of the cases that the plaintiff relies on says that that is a concrete injury in itself. I think it would be different if the plaintiff is alleging that she really wanted to buy Purdue or another particular product and she is refraining from doing so, or if she ends up buying a hypothetical product in reliance on the imagery or lacks confidence. And it turns out not to conform to her expectations. That's another possibility of a concrete injury. But the angst that you're referring to by itself, that's just not a concrete injury. And I just have I have not identified any case that says that. Why not? It seems like it's sort of in between the traditional injury of the defrauded plaintiff. If you got certain information, you would be misled. And let me just put something on the table. It's sort of in between that and the informational injury sort of situation where the plaintiff says, I want more information. So like I. To get the misleading information or I want some truthful information, and this is a little bit of both. So I think a couple of responses, Judge Gatz is first, I mean, the Supreme Court has said in transit that an informational injury unaccompanied by adverse effects is not enough for the three. And in terms of traditionally, what kind of injuries consumers have misled or allegedly misled, very often is the case courts have held that consumers can have standing when they will rely on misrepresentation on a label to their detriment, purchase the item and get duped. So there is some kind of like concrete injury that's actually happening here. Again, I don't think I haven't seen a case that is really suggesting that just the angst that Mistraco actually feels it would be sufficient by itself. In the real world, it just seems like she is worse off because injury means are you worse off? And you are worse off if you buy a product, if you're compelled to buy a product because your dog needs to be fed. You are worse off if you don't know whether the product is commensurate with your values than if you do know that it is. But if the product actually is commensurate with her values, then she's not worse off. In other words, like if she ends up buying a competitor's product, lacking confidence in whether the chickens were raised outdoors and the chickens were raised outdoors, I don't think you can say that she's really worse off in any meaningful sense. And again, I think that's why it sort of invites some speculation as to her asserted injury in connection with other products that we don't know whether they exist and whether they accurately reflect the chickens raising conditions. But she doesn't know whether the product I mean, yes, I think if you assume that the product was accurate, the label was accurate, the image wasn't accurate, then it may turn out that her fears are not well founded. But the point is, she doesn't know. The point is, she doesn't know, but as long as there's no sort of concrete effect associated with her, it's not. So back to TransUnion for a second, if you don't have a statutory right to specific information, informational injury is not concrete, absent a downstream effect. But here, this isn't this isn't the classic non-standing situation where the person wants information because he or she is upset with how the executive branch is running itself. She wants information to inform a purchasing decision. And why isn't that the downstream? Well, because there's no allegation that she won't there's not a plausible allegation that she won't get the information going forward, I think. Well, the allegation is and you've said that, in fact, this isn't a this isn't the government's position, but in the letter that is referenced in the complaint, she understands the government to have to take the position that they don't review imagery on labels for the for the claims that they may implicitly convey. And if that's true, then she does have a reasonable basis for thinking. That she can't rely on imagery, but it doesn't plausibly allege that she'll be in a situation where she can't rely on the imagery because we don't have any basis from the complaint to think that she's going to that the complaint is sort of assuming that when this Mr. Chaga goes to their grocery store, that she's going to be surrounded by a lot of chicken products with cartoons of chickens on farms and that she won't have any basis for distinguishing between them. But there's no basis in the complaint for getting there. We don't know. So it's the lack of allegations of imagery on competitor products, labels, among other things that shows that there is no substantial risk of her actually having this problem when she goes to the grocery store. I mean, it's very possible that she could go to the grocery store and there are no chicken products that have animal raising imagery on them in which case. So that's it's helpful to bring it down that one level of concreteness. And so it's the lack of allegations that there are other labels with with pictures on them. What about the economic argument that that I did not see raised in the I guess I have I have two sort of related questions and really the broader question is, you know, a lot of the cases say what you also argue, which is, you know, and once she's the scales have fallen from her eyes and she knows that, you know, bracketing whether it's actually misleading, but she knows that the that the label is in her understanding misleading, then she lacks standing going forward, at least with respect to that product because she's no longer misled. There's something very odd about a standing doctrine that deprives people who are subjected to deception from challenging the reason that that deception might be ongoing. And I guess my broad question is, what's your response to that? And my narrow question is, do you have a response to the to the economic injury questions that I was posing to Mr. Waltz? Why can't we assume as a matter of basic economic logic that to the extent that these Purdue Fresh labels. Convey an impression that these chickens are raised outside, people are paying an unearned premium for this product, including potentially this plaintiff going forward because she may know that it's misleading, but others don't. I think it's a lot of questions. I know. Yeah. I mean, let me sort of start with I think that the first question you asked in terms of we very much disagree with the premise of the argument that my friend on the other side is making that if Ms. Mishrako does not have standing, then no consumer would have standing. We are not saying that there are no set of facts under which a consumer could potentially have to seek injunctive relief here. What we're saying is that even under the cases, the plaintiff sites, the allegations here are just woefully short. And what would be the kind of I mean, partly just thinking about whether this makes any sense, what would be the kind of situation in which there could be? I mean, let's say for purposes of argument that the government isn't reviewing any graphic imagery and somebody wants to bring a case to trigger a ruling on whether they need to. How would that be teed up? Well, I think even the allegations in Davidson could provide at least a benchmark for what you could but could conceivably get you over. But even in that case, the Ninth Circuit held that it was a very close question. And so allegations that are similar to Davidson maybe could if you the plaintiff is alleging facts to show that she is likely to encounter the product again, that she has no way of knowing whether the product conforms to her expectations or not, and that she would suffer some kind of concrete injury from either not buying the product that she wants to or buying it. And it turns out to be also I think those are allegations that maybe get you there. But again, the complaint here doesn't even get close to that. So I think it would be enough for to affirm just for this court to say even if Davidson were to apply, the allegations don't come close to there. And there's no need to issue any kind of broad ruling that would categorically shut the door on consumers. That's not what we're asking for. I think it's just the allegations of this complaint just do not come up to the level of Davidson or any other cases. Can I get back to this question about the kind of the consumer confusion rationale that let's suppose that there's a complaint that adds the allegations that we were just talking about that you say are missing, which is that there are, in fact, other products out there that contain graphics that indicate the chickens are outside and the lack the extensible lack of review of those graphics gives me pause because I can't look at these various labels and make an informed decision. And you're saying that that's missing. But if we say that that's there or that they were allowed to make the complaint to put that there, then you're saying that still wouldn't be enough because that kind of injury isn't an Article three injury. So if that's true, then there's a lot of people who care about labels on food to make sure that the way the food is prepared is consistent with their faith. And so if somebody says, I need to eat, so I'm going to buy food, but so you could just take it as a given that I'm not going to starve myself, I'm going to actually buy food at the grocery store, I'm looking for the particular label on there that has the K with the circle around it, and I want to make sure that it's consistent with my faith. The government is supposed to review that the government's just not. And so I'm going to buy the products and I've got a lot of anxiety because I don't know that the products, in fact, are prepared in a way that's consistent with my faith. If the government did its job, I would know that. You're saying that that's not an Article three injury. So I think of the hypothetical consumer, if the consumer in your hypothetical wants to buy a product that is making certain representations about. Whether it conforms to their religious preferences or not, right, and they say, I really want to buy this product, I'm just not going to do it because I can't trust it. No, they're not saying I'm not going to do it. They're saying I'm going to buy products and they all contain I'm only going to buy products that contain the label. But I can't be sure that the label, in fact, is true because somebody could just slap the label on there. And in fact, it's prepared in a non adherent way. And if they buy the product and it turns out that the label is false, that is potentially an injury under under Davidson. If they buy the product and it turns out that the product does conform to their religious preferences and they haven't. I take the point. I totally accept the point that you'd have a more sure, more consistent, more traditional concrete injury if you in fact bought a product and it turned out to be misleading, as she did with the Purdue product. And then there's the question of whether that's the basis of a forward looking claim. What I'm saying is let's let's just say that that allegation is not there because she just doesn't know if it's the consumer just doesn't know if it's in fact consistent with the label. But their faith requires them to only eat products, eat food that's prepared in a certain in a certain way. And so the injury that she's claiming is it's the lack of knowledge about that that's giving me anxiety. I don't know whether the food is prepared in a way that's consistent with my religious beliefs. If the government did the job, I would and I'm going to keep buying food products because I need to feed myself. But I'd like to do it in a way that gives me certainty that, in fact, it's being prepared in a way that's consistent, consistent with my faith. I have not seen a case that the other side decided that would suggest that that amount of angst and uncertainty by itself would be an injury. But at the end of the day, I don't think the court needs to get there for a number of reasons, because we are making a lot of assumptions about what allegations are here. It's not that would I would concede that would be a trickier set of facts. But again, I don't think that the courts have recognized that kind of injury just based on that kind of uncertainty or angst by itself is an injury. It's going to seem like a merits question, but I'll try to back into justiciability. Why isn't the government reviewing this cartoon or graphic, whatever it is? The statute requires review of written, printed or graphic matter. This would seem to be a graphic. So I'll say what I'll respond in the same way that I did to judge earlier, which is that, you know, I don't want to get ahead of my feet on this because given where we are in the pleadings, again, we dispute that, dispute the central allegation that's here. I mean, we understand that the our own applicable regulations require us to review imagery and dispute that or not. Yeah, that's fair, but. I mean, the harder part of the case for you is. Labels by other manufacturers, right, and. One reason we might not want to get into that is if there's more nuance in the question when something that looks like a graphic may or may not be, and we're thinking your friend on the other side says, well, issue an order, issue an order that the government review graphics, I mean, if that's a. Discreet, clean, well-presented legal question, the reasons we might be comfortable doing that, considering an order like that in this case, it's less troubling than if. Different pictures of other manufacturers that aren't before us just raise a lot of fact questions. I think there are a lot of questions here. I don't want to sort of be out here making representations. Can you give me a little bit of a sense of what when it is or isn't a graphic, give you a sense of why we shouldn't go beyond the one picture that's before us? Sorry, are you asking whether the particular cartoon in this case is the graphics? I wasn't wasn't. Yeah. Or why might this one not be a graphic? And. And the allegation is you're not reviewing it, I understand, I mean, I want to be careful not to. Make any kind of representations about how exactly the agency is reviewing your graphics, is there anything you can say? Well, I think in some cases, just when when there is when there are graphics in a label, it's not necessarily making a representation. It can just be marketing or something like that. It's not necessarily making a claim about what the product is or is not. And anything about the product, but I don't want to say anything more specifically on that, appreciate it. I wanted to give you a chance if you had anything to add to respond to the tail end of my set of questions about how one gets standing, which was about the sort of basic economic logic that's that if this graphic communicates a free roam, you know, non textual, even better than the textual categories. It could be commanding, it would stand to reason that it commands a higher price than Purdue's other than fresh chicken breasts. Why is that not alone enough, even by a consumer who now knows that it's not free roam because others might be looking at this and willing to pay a premium and therefore she is harmed by the artificially elevated market price? Maybe I mean, I don't know enough about the market prices of organic chicken or anything else, just in part because it's not a lesson to complain. And so I don't want to make any. And I think at the end of the day, she hasn't really alleged, I know this is not a satisfying response to your question, but the complaint doesn't really allege anything about paying a premium or not. And so I think it would seem like it would be traditional injury under TransUnion or any if she paid a premium and paid a premium because the product presented itself as something better than it is. For example, if you took DC tap water and bottled it in a bottle that had pictures of of a verdant, rural spring and marketed it at a high price compared to like regular tap water in a bottle. Yeah, I mean, I see that I see how that. I mean, it's possible that that could present an injury to see damage is not necessarily injunctive, depending on the allegations here, but again, the complaint is not alleging anything about the price of Purdue versus any other products. And so I don't think that would provide a basis for reversing the decision. Thank you, Mr. White, Mr. Waltz, we'll give you two minutes for rebuttal. Thank you, but just first start with a response, I think, to that hypothetical you talked about. If a mistrack or if someone just does not know. Whether a label or an advertising is accurate or inaccurate, whether that's injury, I heard the answer was no, that that that isn't an injury for standing. I'm sorry, TransUnion, TransUnion, I think, says that looking to this Congress is sort of the statutory scheme can be helpful, not dispositive, but helpful in identifying what's a legally cognizable interest. And the purpose of the PPA is to protect the health and welfare of consumers from poultry products that are ensuring that they are not that they are properly marked, labeled and packaged. So, you know, we're in a statutory scheme that seeks to protect consumer interest and accuracy of labels. I think that helps inform whether whether the injury is sufficient, is a legally cognizable injury. And then I also just wanted to quickly echo what Judge Pillard was saying about this sort of odd standing doctrine we're in. You know, we've thought about should we've alleged in the complaint that ALDF has 300,000 members and many other members purchase chicken products, Purdue chicken products. One of the challenges is for should we reach out or should we to a member and ask them to be a declarant while they may have standing because they currently do not know that the purdue chicken they're purchasing is is misleading the minute we ask them to be a declarant and we tell them that all of a sudden they move, they're standing or they potentially standing under this theory that if you if you if you know that the product is a product of the consumer society and, you know, we believe that the Davidson theory of consumer confusion, which applies even more stronger here, helps helps get around that that really odd doctrine, work of the doctrine. Thank you. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Pillard, Katsas